UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| M-SHOT LLC, a Utah limited liability company; MOONSHIP LLC, a Utah dba; and DEVON STANFIELD, an individual,<br><br>Plaintiff,<br><br>v.<br><br>LIBERTY MUTUAL INSURANCE AGENCY, a corporation formed under the laws of Massachusetts; and OHIO SECURITY INSURANCE COMPANY, a corporation domiciled in New Hampshire,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART [7] DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 2:26-cv-00142-DBB-DAO<br><br>District Judge David Barlow |

Before the court is Defendants Liberty Mutual Insurance Agency ("Liberty Mutual") and Ohio Security Insurance Company's ("Ohio Security") Motion to Dismiss[1] Plaintiffs' Amended Complaint.[2]

## BACKGROUND

This case arises from an insurance dispute. Plaintiffs allege the following: Devon Stanfield owns M-Shot, LLC ("M-Shot") and Moonship, LLC ("Moonship").[3] M-Shot is the "doing business as" ("d/b/a") registration of Moonship.[4] On May 3, 2023, a fire caused significant damage to property owned by Plaintiffs.[5] At the time of the fire, Plaintiffs were

---

[1] Motion to Dismiss ("MTD"), ECF No. 7, filed Feb. 26, 2026.
[2] Amended Compl., ECF No. 7-2, filed Feb 26, 2026.
[3] *Id.* ¶ 1.
[4] *Id.* ¶ 3.
[5] *Id.* ¶ 10.

insured under a Liberty Mutual or Ohio Security insurance policy (the "Policy").[6] The fire

caused over $3.5 million in total damages to Plaintiffs' property, but only around $1.9 million of

this is covered under the Policy within the aggregate limits.[7] On October 25, 2023, Plaintiffs first

notified Defendants of their intent to repair the building and "recover all recoverable

depreciation."[8] Defendants subsequently paid around $300,000, leaving approximately $1.6

million due under the policy.[9] On May 19, 2024, Plaintiffs sent Defendants a detailed, 250-page

demand letter outlining the basis for their claim and requesting payment of the outstanding

amount owed under the policy.[10] In January 19, 2026, Plaintiffs submitted a claim for around

$500,000 for business interruption damages also stemming from the fire.[11] On this same day,

Plaintiffs provided Defendants with an additional report that answered all questions posed by

Defendants' insurance adjuster.[12] They also provided the adjuster with additional information

when requested.[13] Defendants have not yet paid the remaining amount due under the Policy.[14]

## STANDARD

"Dismissal under Rule 12(b)(6) is appropriate only if the complaint, viewed in the light

most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its

face."[15] "A claim has facial plausibility when the plaintiff pleads factual content that allows the

---

[6] *Id.* ¶ 11.
[7] *Id.* ¶¶ 17–18.
[8] *Id.* ¶ 19.
[9] *Id.* ¶¶ 20–21.
[10] *Id.* ¶ 22.
[11] *Id.* ¶¶ 23–25.
[12] *Id.* ¶¶ 25–26.
[13] *Id.* ¶ 30.
[14] *Id.* ¶ 28.
[15] *Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019) (citing *United States ex rel. Reed v. KeyPoint Gov't Sols.,* 923 F.3d 729, 764 (10th Cir. 2019)).

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[16] "In evaluating a motion to dismiss, the court must take as true all well-pleaded facts, as distinguished from conclusory allegations, view all reasonable inferences in favor of the nonmoving party, and liberally construe the pleadings."[17] Conclusory statements and legal conclusions are "not entitled to the assumption of truth."[18]

Generally, "a motion to dismiss should be converted to a summary judgment motion if a party submits, and the district court considers, materials outside the pleadings."[19] "However, notwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, 'the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'"[20] Courts may also consider "documents that the complaint incorporates by reference,"[21] "documents attached as exhibits to the complaint,"[22] and "matters of which a court may take judicial notice,"[23] including "facts which are a matter of public record."[24]

---

[16] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

[17] *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1130–31 (10th Cir. 2024) (quoting *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021)) (also quoting *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002)) (cleaned up).

[18] *Iqbal*, 556 U.S. at 1951 (emphasis omitted).

[19] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Prager v. LaFaver*, 180 F.3d 1185, 1188 (10th Cir. 1999)).

[20] *Id*. (quoting *Jacobsen v. Deseret Book Co*., 287 F.3d 936, 941 (10th Cir. 2002)).

[21] *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd*., 551 U.S. 308, 322 (2007)).

[22] *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001).

[23] *Tellabs, Inc. v. Makor Issues & Rts., Ltd*., 551 U.S. 308, 322 (2007).

[24] *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).

**DISCUSSION**

In their Amended Complaint, Plaintiffs assert claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unfair claim settlement practices, and declaratory judgment.[25] Defendants move to dismiss the implied covenant and unfair claim settlement practices causes of action for failure to state a claim.[26] Defendants also move to dismiss all claims by Mr. Stanfield and Moonship and all claims against Liberty Mutual on the grounds that those parties are neither insurers nor insureds under the Policy and thus have no contractual relationship.[27]

## I. Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiffs' second cause of action asserts a claim for breach of the implied covenant of good faith and fair dealing.[28] "The implied covenant of good faith and fair dealing . . . inheres in every contract."[29] "The covenant prohibits the parties from intentionally 'injur[ing] the other party's right to receive the benefits of the contract,' and 'prevent[s] either party from impeding the other's performance of his obligations' by 'render[ing] it difficult or impossible for the other to continue performance.'"[30] "In the insurance context, the 'implied covenant of good faith [and fair dealing] contemplates . . . that the insurer will diligently investigate the facts to enable it to

---

[25] Amended Compl. ¶¶ 37–89.

[26] MTD 2–3.

[27] *Id.* at 3.

[28] Amended Compl. ¶¶ 52–62.

[29] *Markham v. Bradley*, 2007 UT App 379, ¶ 18, 173 P.3d 865, 871.

[30] *Backbone Worldwide Inc. v. LifeVantage Corp.*, 2019 UT App 80, ¶ 16, 443 P.3d 780, 785 (quoting *Markham*, 173 P.3d at 871) (alterations in original).

4

determine whether a claim is valid, will fairly evaluate the claim, and will thereafter act promptly and reasonably in rejecting or settling the claim.'"[31]

Here, Defendants argue that the Amended Compliant fails to state facts showing that their evaluation of the insurance claim was conducted in bad faith.[32] They contend that disagreement about the value of the claims or the availability of coverage is insufficient to show bad faith.[33] Plaintiffs respond that the Amended Complaint includes facts showing that Defendants have delayed their investigation and have failed to communicate an official coverage position on the claim for nearly two years.[34]

A plaintiff cannot plausibly allege bad faith under an insurance contract by merely showing that coverage was denied or even that denial was erroneous.[35] However, facts from which it can be plausibly inferred that a defendant insurer failed to diligently investigate or promptly resolve a claim may be sufficient to state a claim for breach of the implied covenant of good faith and fair dealing.[36] Here, the Amended Complaint includes facts showing that Plaintiffs submitted a claim as early as October 2023 and submitted a detailed demand letter reiterating that claim and its basis in May 2024.[37] Plaintiffs also allege facts indicating that, as late as January 2026, Defendants' insurance adjuster was still investigating the claim and requesting additional information relating to Plaintiffs' original demand packet.[38]

---

[31] *U.S. Fid. v. U.S. Sports Specialty*, 2012 UT 3, ¶ 20, 270 P.3d 464, 470–71 (quoting *Prince v. Bear River Mut. Ins. Co.*, 2002 UT 68, ¶ 27, 56 P.3d 524) (alterations in original).
[32] MTD 6.
[33] *Id.* at 8–10.
[34] Opposition to Motion to Dismiss ("Opp'n") 11–13, ECF No. 13, filed Mar. 23, 2026.
[35] *See City of Orem v. Evanston Ins. Co.*, No. 216CV00425JNPPMW, 2017 WL 4877292, at *3 (D. Utah Oct. 27, 2017).
[36] *See U.S. Fid.*, 270 P.3d at 470–71.
[37] Amended Compl. ¶¶ 19, 22.
[38] *Id.*

Viewed in the light most favorable to Plaintiffs, these facts plausibly permit the inference that Defendants failed to diligently investigate and promptly resolve the claim. Defendants reply that Plaintiffs' arguments concerning the claims handling timeline are improperly argued because the Amended Complaint includes broad, conclusory allegations like "Defendants failed to timely pay Plaintiffs' valid insurance claim."[39] Though such a statement would be insufficient to state a claim on its own,[40] in this case the allegations of delay are supported by specific facts that plausibly show an extended investigation timeline. Thus, the Amended Complaint states a claim for breach of the implied covenant of good faith and fair dealing at this stage.

## II.   Unfair Claims Settlement Practices

Plaintiffs' third and fourth causes of action allege unfair claim settlement practices under Utah Code §§ 31A-26-303 and 31A-26-301 respectively.[41] Defendants argue that these provisions do not create a private cause of action under Utah law.[42] Plaintiffs concede that no private cause of action exists under these statutes.[43] They nonetheless argue that their claims should remain because the statutes "inform the duties owed under the implied covenant of good

---

[39] Reply in Support of Motion to Dismiss ("Reply") 3–4, ECF No. 15, filed Apr. 6, 2026 (quoting Amended Compl. ¶ 75).

[40] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

[41] Amended Compl. ¶¶ 63–79.

[42] MTD 11–13; *see also* Utah Code Ann. § 31A-26-303(5) ("This section does not create any private cause of action."); *Cannon v. Travelers Indem. Co.*, 2000 UT App 10, ¶ 23, 994 P.2d 824, 828 ("[S]imply by examining the plain language of the statute, we conclude . . . that [Defendant's] alleged breach of section 31A–26–303 created no private cause of action."); *Machan v. UNUM Life Ins. Co. of Am.*, 2005 UT 37, ¶ 31, 116 P.3d 342, 349 (concluding that the substantially similar "2000 version of Utah Code section 31A–26–301 did not allow a private cause of action by an insured against an insurer.").

[43] Opp'n 3.

faith and fair dealing" and provide an "evaluation tool for fair standards and conduct" of insurance companies.[44] Alternatively, Plaintiffs request leave to amend their complaint.[45]

These arguments are unpersuasive. If the statutes do not create a private cause of action, then any claims based on the statutes must be dismissed. And it is unclear what purpose, if any, allowing amendment on these grounds would accomplish. To the extent these provisions are relevant to Plaintiffs' other claims, the court may consider them regardless of whether they allege an independent cause of action or are listed in the complaint. Plaintiffs' third and fourth causes of action are dismissed.

## III.    Contractual Relationship

Defendants argue that Mr. Stanfield and Moonship are not parties to the Policy and so lack standing to assert any contract-based claims.[46] They also argue that Liberty Mutual is not an appropriate defendant because it was not a party to the Policy and was not Plaintiffs' insurer.[47] Defendants rely on the language of the Policy, which they attach as an exhibit, to make these arguments.[48] Because the Policy is referred to throughout the Amended Complaint and is central to Plaintiffs' claims,[49] and because the parties do not dispute its authenticity, the court may consider it when deciding the Motion to Dismiss.[50]

---

[44] *Id.* at 3, 19.
[45] *Id.* at 19.
[46] MTD 14, 16–17.
[47] *Id.* at 17.
[48] *See id.*
[49] *See generally* Amended Compl.
[50] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

### A.    Mr. Stanfield and Moonship

Defendants first contend that Mr. Stanfield and Moonship lack standing to bring any claims under the Policy because they are neither parties to the contract nor third-party beneficiaries.[51] "As a general matter, 'a plaintiff must demonstrate standing to sue by establishing (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.'"[52] "It is well established contract law that only parties to a contract or intended beneficiaries have standing to sue under the contract."[53] In this case, the Policy lists M-Shot as the named insured.[54] Moonship and Mr. Stanfield are not referenced anywhere in the Policy, as named insureds or otherwise.[55] This indicates that they are not parties to the agreement and therefore lack standing to bring any contractual claims based on the Policy.

Plaintiffs make several arguments in support of their claims. First, they contend that standing exists under *Philadelphia Indemnity Insurance Co. v. Lexington Insurance Co.*[56] In *Philadelphia*, the Tenth Circuit considered whether an insurance company had standing to seek declaratory relief against another insurance company regarding which company was responsible for paying damages to a building that was separately covered by both insurers.[57] The court

---

[51] MTD 15–16.

[52] *Philadelphia Indem. Ins. Co. v. Lexington Ins. Co.*, 845 F.3d 1330, 1335 (10th Cir. 2017) (quoting *Colorado Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 543 (10th Cir. 2016)).

[53] *Mark Techs. Corp. v. Utah Res. Int'l, Inc.*, No. 2:03-CV-831-DAK, 2004 WL 724386, at *2 (D. Utah Mar. 15, 2004) (quoting *Shire Development v. Frontier Investments*, 779 P.2d 221, 222–23 (Utah App. 1990)); *see also Behav. Med. Consulting, LLC v. CHG Companies, Inc.*, No. 2:19-CV-00967-JNP-CMR, 2022 WL 889030, at *3 n.2 (D. Utah Mar. 25, 2022), *aff'd*, No. 23-4047, 2024 WL 4235124 (10th Cir. Sept. 19, 2024) ("Plaintiffs lack standing to attempt to enforce a breach of contract claim for a contract to which they are not a party."); *Harper v. Great Salt Lake Council, Inc.*, 1999 UT 34, ¶ 20, 976 P.2d 1213, 1218.

[54] Policy 17, ECF No. 13-2, filed Mar. 23, 2026.

[55] *See id.*

[56] Opp'n 15.

[57] *Philadelphia Indem. Ins. Co. v. Lexington Ins. Co.*, 845 F.3d 1330, 1333, 1335–36 (10th Cir. 2017).

concluded that the plaintiff had standing despite not being a party to the other insurer's contract because it was seeking a declaration of its rights and duties rather than relief under the contract.[58] The Tenth Circuit specifically distinguished those facts from an Oklahoma case where an individual lacked standing to sue for relief under an insurance contract to which she was not a party or a third-party beneficiary.[59] Thus, *Philadelphia* has no bearing on standing in this case because Plaintiffs are suing for relief under the Policy.[60]

Next, Plaintiffs argue that Moonship is listed as a d/b/a entity of M-Shot on the policy liability certificate, which Plaintiffs attach as an exhibit.[61] They contend that this shows Moonship is an insured, or alternatively, that Defendants should be estopped from arguing that Moonship was not insured because Plaintiffs relied on the certificate.[62] However, unlike the Policy itself, this separate liability certificate was not referenced in or attached to the Amended Complaint, so the court cannot consider it on a motion to dismiss.

Plaintiffs also argue that the Policy is ambiguous as to the named insured and that ambiguity in a contract must be construed against the drafter.[63] They point to the Policy declarations page, which says, "Named Insured Is: Limited Liability Company" and "Named Insured Business Is: Painting Picture and Frame Store."[64] Plaintiffs contend that the "limited

---

[58] *Id.* at 1335–36.

[59] *Id.* at 1335.

[60] The breach of contract and breach of implied covenant claims arise solely from contractual obligations under the Policy, and the fifth cause of action seeks declaratory judgment that Defendants are obligated to cover Plaintiffs losses under the Policy. *See* Amended Compl. ¶¶ 37–62, 80–89.

[61] Opp'n 16.

[62] *Id.*

[63] *Id.* at 16–17.

[64] Policy 17.

liability company" designation could arguably refer to both M-Shot and Moonship and that the "frame store" designation is more indicative of Moonship's business purpose than M-Shot's.[65]

Under Utah law, courts "look to the language of the contract to determine its meaning and the intent of the contracting parties."[66] "Where 'the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law.'"[67] However, if the contract's language is ambiguous, the court may "consider extrinsic evidence of the parties' intent."[68] Ambiguity exists when a contract term "is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies."[69]

In this case, the Policy is unambiguous. M-Shot is listed throughout as the only "named insured."[70] Moonship and Mr. Stanfield are never named.[71] The declarations page "limited liability company" and "frame store" designations are most clearly descriptions of M-Shot as the named insured. They do not tacitly extend insurance coverage to a separate entity that is never named in the Policy.

In the alternative, Plaintiffs argue that Moonship and Mr. Stanfield are third-party beneficiaries with respect to the Policy because it is "axiomatic that insurance frequently is purchased not only to provide funds in case of loss, but to provide peace of mind for the insured

---

[65] *Id.*
[66] *Cafe Rio, Inc. v. Larkin-Gifford-Overton, LLC*, 2009 UT 27, ¶ 25, 207 P.3d 1235, 1240.
[67] *Id.* (quoting *Green River Canal Co. v. Thayn*, 2003 UT 50, ¶ 17, 84 P.3d 1134).
[68] *Id.*
[69] *Id.*
[70] *See, e.g.,* Policy 1, 6, 7, 17, 21.
[71] *See id.*

or his beneficiaries."[72] Plaintiffs contend that Moonship, as the operating entity at the insured location and an owner of M-Shot, and Mr. Stanfield, as the creator and owner of the inventory, may thus assert claims as third-party beneficiaries.[73]

In Utah, "[t]hird-party beneficiaries are 'persons who are recognized as having enforceable rights created in them by a contract to which they are not parties and for which they give no consideration.'"[74] "For a third party to have enforceable rights under a contract, the intention of the contracting parties to confer *a separate and distinct benefit* upon the third party must be clear."[75] It is not enough for contractual parties to simply "know, expect or even intend that others will benefit from the contract."[76] Rather, "[t]he contract must be undertaken for the plaintiff's direct benefit and the contract itself must affirmatively make this intention clear."[77]

In this case, the Policy lacks any clear intention to benefit Mr. Stanfield and Moonship. Even if they would incidentally benefit from M-Shot's insurance coverage, the Policy confers no separate and distinct benefit on them as third parties, and it includes no affirmative statement that it was undertaken for their direct benefit. The Amended Complaint does not include any facts showing that Moonship and Mr. Stanfield are either parties to the insurance contract or intended third-party beneficiaries of that agreement. Therefore, they lack standing to sue under the Policy, and their claims must be dismissed.

---

[72] Opp'n 18 (quoting *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 802 (Utah 1985)).
[73] *Id.*
[74] *Rio Algom Corp. v. Jimco Ltd.,* 618 P.2d 497, 506 (Utah 1980) (quoting 4 Corbin on Contracts § 774 at 6 (1960)).
[75] *Carmona v. Travelers Cas. Ins. Co. of Am*., 2018 UT App 128, ¶ 10, 428 P.3d 65, 68 (quoting *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc*., 2001 UT 54, ¶ 47, 28 P.3d 669) (emphasis in original).
[76] *Carmona*, 428 P.3d at 69 (quoting *SME Indus*., 28 P.3d at 669).
[77] *Id.*

## B.     Liberty Mutual

Finally, Defendants argue that all claims against Liberty Mutual must be dismissed because it is not a party to the contract and is not the insurer under the Policy.[78] Plaintiffs respond that, though the Policy identifies Ohio Security as the insurance underwriter, Liberty Mutual is named on nearly every page of the Policy.[79] They argue that Liberty Mutual's role in issuing, servicing, and adjusting the policy requires additional discovery to determine and that dismissal would be inappropriate at this stage.[80] Defendants reply that Liberty Mutual only appears as a brand or service mark in the Policy and that its usage never indicates that it undertook any contractual obligations under the agreement.[81]

As with the insured party, the Policy clearly identifies the insurer. It states that Ohio Security is the coverage provider on each declarations page.[82] The Policy also refers to Liberty Mutual multiple times. The vast majority of these references are simple copyright marks at the top or bottom of many pages.[83] Some references occur in the context of reporting a claim,[84] and others are part of a California privacy notice.[85] Even though the name Liberty Mutual appears in the Policy, there is no indication that Defendant Liberty Mutual Insurance Agency was a party to that agreement. The Amended Complaint does not include allegations from which it could be plausibly inferred that Liberty Mutual issued the Policy and insured Plaintiffs' property,

---

[78] MTD 17–18.

[79] Opp'n 18.

[80] *Id.* at 19.

[81] Reply 5.

[82] *See* Policy 17, 18, 19, 21, 22, 23, 24.

[83] *See, e.g. id.* at 1 (Liberty Mutal logo in the top left), 3 (Liberty Mutual copyright mark in the bottom middle).

[84][84] *Id.* at 5 ("Liberty Mutual Insurance claims professionals across the United States are ready to resolve your claim quickly and fairly, so you and your team can focus on your business. . . . A Liberty Mutual customer service representative is available to you 24/7.").

[85] *Id.* at 11.

12

especially in light of the Policy's unambiguous assertion that Ohio Security was the contractual insurer. In the absence of adequate allegations showing that Liberty Mutual was a party to the contract, there is no basis for any liability to Liberty Mutual under that contract. The claims against Liberty Mutual are dismissed.

## ORDER

Defendants' [7] Motion to Dismiss is GRANTED in part and DENIED in part. All claims by Plaintiffs Devon Stanfield and Moonship, LLC are dismissed for lack of standing. All claims against Defendant Liberty Mutual Insurance Agency are dismissed. Additionally, Plaintiffs' third and fourth causes of action are dismissed. All dismissals are without prejudice.

Signed May 26, 2026.

BY THE COURT

_____
David Barlow
United States District Judge

13